UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 4:23-CR0147 RLW |
| v. ) | |
| ) | |
| KYLE JAMES GIPSON, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT'S SENTENCING MEMORANDUM

Comes Now Defendant Kyle Gipson, through counsel, and submits this Sentencing Memorandum for the Court's consideration in support of a sentence of fifteen years in the Bureau of Prisons followed by lifetime supervised release. This sentence reflects the nature and circumstances of Defendant's offense, his history and characteristics, the need for punishment and deterrence, and is sufficient but not greater than necessary to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

With a sentencing range of 15-30 years, and the Federal Sentencing Guidelines suggesting life, the Court must determine an appropriate sentence.  Defense recognizes that Kyle seeks a significant variance.  The facts of this case are tragic, and certainly Kyle must be punished for his actions.  Kyle knows this, which is why he accepted responsibility by pleading guilty.

Not a day goes by where Kyle does not think about the harm he has done here.  Through his actions he not only harmed the person he loved the most, but he destroyed his family and any chance of having a relationship with his daughter.  He only blames himself.  Yet, Kyle asks the Court to consider not just his actions here, but the entirety of his life and his potential for rehabilitation if given significant mental health and sex offender treatment.

In the Eastern District of Missouri, approximately fifty five percent of individuals sentenced under § 2G2.1 with an offense level in Zone D and Category I Criminal History were sentenced 15 to 25 years, with approximately thirty percent receiving a sentence between 15-20 years.[1]  The average sentence length being 236 months.[2]  When factoring in the age range of 21-25, that average sentence length is 207 months.[3]

Defense contends that when considering the 3553(a) factors, and considering these comparative cases, a below guideline sentence is warranted.  Particularly given Kyle's age, lack of criminal history, his own traumatic abuse history, and lack of meaningful treatment in the past.

### *The Dilemma of Childhood Sexual Abuse*

On the surface, Kyle had several positive aspects of his childhood. He had a very close relationship with his mother who provided him with care and support.  Though his parents were separated, he maintained a good relationship with his father.  All his basic needs were met. To an outsider looking in, Kyle's family life and upbringing likely would not present any concerns. But what was happening behind closed doors likely had a significant influence on his future and how he ended up before this Court.

For years, Kyle was silently struggling with serious childhood trauma. Throughout his childhood, he was subjected to sexual abuse multiple times.  The details of the abuse is addressed in the Presentence Investigation Report, and is part of the psychosexual evaluation submitted to the Court.[4]  As the Court can see, Kyle was significantly abused by a family member over a period of time.

---

[1] Available at https://ida.ussc.gov/analytics/saw.dll?Dashboard (2018-2022, § 2G2.2 Sentencing Zone D, with Criminal History Category I, 36 reported cases.
[2] *Id*.
[3] *Id*. 3 reported cases, age range adjusted to 21-25.
[4] *See* Psychosexual Report of Dr. Stephanie Bono (hereafter Bono Report).

2

Kyle disclosed the abuse, but it took him a long time to tell anyone. Research provides various reasons for late disclosure of abuse.[5] His family addressed the abuse in their own way, but they never took the critical step of seeking psychological help. As an adult, Kyle continued to ignore it. This was an error.

In cases like this, the details of an individual's sexual history and background come to the forefront. Uncovering what may have contributed to or caused the criminal behavior is important to understanding the individual and for future treatment. Kyle's introduction to sexualized behavior came far too early and came from experiencing sexual abuse by another. These repeated incidents of sexual exploitation and victimization were his first sexual encounters. Unfortunately, these experiences no doubt laid the foundation for his poor mental health, which played a role in his offense conduct.

Studies show that approximately twenty-three percent of sex offenders experienced sexual abuse in childhood.[6] This has led researchers to conclude that the prevalence of sexual abuse in childhood among sex offenders is higher than the average prevalence rate of such abuse among adult males in the general population.[7] This research underscores the potential connection between victims of childhood sexual abuse and the chance they may become offenders themselves. It is

---

[5] Some reasons include that they feel guilty because they believe that the abuse is their fault; they are ashamed to tell; they are confused because the offender is someone they know and trust; they have been convinced that the abuse is normal or okay; and they are too young to know that the abuse isn't appropriate—especially if it's done by someone they know and trust. See Early Open Often, *Why Kids Don't Tell* accessed at https://www.earlyopenoften.org/get-the-facts/why-kids-dont-tell/

[6] *See* R. K. Hanson and S. Slater, Sexual Victimization in the History of Child Sexual Abusers: A Review. Annals of Sex Research, 1: 485–499 (1988). (discussing what is known as the victim-to-perpetrator cycle).

[7] *See* R. J. Garland and M.J. Dougher, The abused/abuser hypothesis of child sexual abuse: a critical review of theory and research. In J.R. Feierman, ed., Pedophilia: Biosocial dimensions. 488-519 (1990); *See also* M. Glasser, I. Kolvin, D. Campbell, A. Glasser, I. Leitch, and S. Farrelly, Cycle of child sexual abuse: Links between being a victim and becoming a perpetrator. 179 British Journal of Psychiatry*,* 482–494 (2001); A. F. Jespersen, M.L. Lalumière, and M. C. Seto, Sexual abuse history among adult sex offenders and non-sex offenders: A meta-analysis. 33(3) Child Abuse & Neglect, 179-192 (2009); J. Craissati, G. McClurg, and K. Browne, Characteristics of perpetrators of child sexual abuse who have been sexually victimized as children. 14 Sexual Abuse: A Journal of Research and Treatment, 225–239 (2002).

likely that Kyle became stunted emotionally by this childhood abuse and lacked the ability to clearly reflect on his decision-making. Childhood sexual abuse has also been correlated with higher levels of depression, guilt, shame, anxiety, and dissociative patterns.[8]

Past victimization is not a legal defense, but it does provide some context for why someone like Kyle would commit this offense. More importantly, Courts have found it to be a mitigating factor and considered it as a reason for a downward variance.[9] Kyle asks the Court to consider this when determining an appropriate sentence.

These charges have forced Kyle to go to the root of his problems: his lack of recognition of his childhood abuse and lack of therapy to address his unresolved issues. He is confident he will receive treatment in the Bureau of Prisons and is eager to begin this treatment. Kyle has the right attitude and mindset to start the treatment, and the fifteen-year prison sentence will give him plenty of time to focus on improving his mental health.

### *Other 3553(a) Factors for Consideration*

A.  *The nature of offense: the online chat history.*

Aside from the production and distribution that occurred here, of particular concern to the Court will no doubt be Kyle's online chat history. It is prominently featured in the PSR and given the content it is understandable it would be of concern. What Kyle wants the Court to know is that the chats largely represent "fantasy talk." Aside from the production of these images, Kyle has

---

[8] *See* M. Hall & J. Hall, The long-term effects of childhood sexual abuse: Counseling implications. Retrieved from http://counselingoutfitters.com/vistas/vistas11/Article_19.pdf (last visited September 28, 2020).

[9] *See United States v. Farley*, 36 F.4th 1245, 1249 (10th Cir. 2022); *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007) (affirming variance from Guideline minimum sentence of 151 months to 84-month sentence based on extensive history of childhood abuse); *United States v. Monson*, 2023 U.S. Dist. LEXIS 226385 (D. Mn. 2023) (downward variance after court emphasized mitigating factors such as defendant's personal trauma and childhood experiences); *Keiser v. United States*, 2021 U.S. Dist. LEXIS 2597 (Pa. MD 2021) (after considering defendant's childhood abuse, court granted a downward variance)

4

never engaged in other sexual contact with the victim. He never intended to meet up with anyone he was chatting with. Those chats presented in the PSR were part of his disturbed fantasy talk.

Kyle understands how the chats look when compared to his actual offenses. But no other abuse was found from the investigation, and Kyle contends that while he said the things he said, he never acted on any of it as he portrayed. These were words only. He asks the Court to punish him for what he has pled to and not any acts based on speculation.

B.      *Punishment: fifteen years in prison is a lengthy sentence that will serve the purposes of 3553(a).*

Fifteen years in the Federal Bureau of Prisons is a significant sentence. It is nowhere near a slap on the wrist. Kyle has already been confined for almost a year in jail. He has lost his daughter. His punishment has begun already, and a sentence greater than fifteen years will add time that is unnecessary to accomplish a significant punishment. The requested sentence is sufficient but not greater than necessary to meet the sentencing goals under 3553(a).

C.      *Punishment: sex offender registration and supervision is punishment.*

Because of Kyle's actions, he will be labeled a sex offender. This label will mark him until the day he dies. Sex offender registration is a severe consequence of his plea. The Sixth Circuit held that the state sex offender registration statute imposed punishment.[10] "In sum, while SORA is not identical to any traditional punishments, it meets the general definition of punishment, has much in common with banishment and public shaming, employs geographical restrictions like those employed by punitive sun-down laws, and has a number of similarities to parole/probation."[11] This will be true for Kyle.

---

[10] *Doe v. Snyder*, 834 F.3d 696, 705 (6th Cir. 2016).
[11] *Id.* at 703.

The consequences of a plea of guilty also serve as a deterrent. Courts have held that the shame of publicly pleading guilty not only deters the offender but can simultaneously serve as a deterrent for others if they were capable of being deterred.[12] With his plea and conviction, Kyle will continue to be punished and labeled for the rest of his life. As time goes on the punishments for being a registered sex offender seem to worsen. In many ways it is a life sentence. Kyle agrees it is just punishment for what he is done, but it should be noted as punished and not simply a "collateral consequence."

D.      *Deterrence: conditions of supervised release strike a good balance of protecting the public and assisting the individual with rehabilitation.*

The conditions of supervised release that are placed on individuals who have pled to crimes like these are extensive. There are more conditions placed on sex offenders than any other offenders. Conditions such as: polygraphs, limited or monitored computer access, no contact with minors, and weekly treatment (individual and group) are all suggested in the PSR. The conditions are difficult and are targeted to address specific concerns of sex offenders.

The Probation Office does an excellent job of supervising these individuals and reporting any concerns to the Court. Given the number of supervision strategies and safeguards, and the level of high-level monitoring, Kyle's compliance is all but ensured. With lifetime supervision, Kyle will be greatly deterred and it reduces the need for the maximum prison sentence.

E.      *Background and Characteristics: Kyle's age.*

When looking at recidivism, Kyle's age is also a key factor. When considering that need, the age of a defendant is relevant to determining the appropriate length of imprisonment.[13] In its

---

[12] *United States v. Shipley,* 560 F. Supp. 2d 739, 745 (S.D. Iowa 2008); *United States v. Jacob*, 631 F. Supp. 2d 1099, 1118 (N.D. Iowa 2009).
[13] *United States v. Nellum*, 2:04-CR-30-PS, 2005 WL 300073 (N.D. Ind. Feb. 3, 2005).

2016 study, the Sentencing Commission found that recidivism rates decline relatively consistently as age increases.[14] According to this study, recidivism rates decline steadily with age.[15] The phenomenon of aging out of criminal activity is more common.[16] At age 23, if given a 15 year sentence, he will spend nearly half his life in prison. Under these facts, sentencing him to a sentence that is greater than the number of years he has been alive seems greater than necessary to achieve the goals of sentencing.

In its 2019 study, the Sentencing Commission found that the average age of child pornography production offenders sentenced was 38 years old.[17] As stated above, Kyle's young age is seen with less frequency in this district. Younger production defendants statistically get lower sentences. Kyle asks the Court to consider his age when considering his sentence.

F.      Background & Characteristics: Dr. Bono's Report reflects Kyle has rehabilitative potential.

To assist the Court in assessing Kyle's background, Counsel has filed as an exhibit a psychosexual evaluation from Dr. Stephanie Bono, a forensic psychologist with experience evaluating and treating sex offenders.[18] Dr. Bono found that with treatment which included discussing his own abuse history, Kyle may be able to correct any bad behaviors.[19] Based on the multiple evaluations completed, Dr. Bono found that Kyle has a positive prognosis for "future adjustment," meaning he is amenable to treatment which may be the most important aspect of his

---

[14] *See* U.S. Sentencing Commission, RECIDIVISM AMONG FEDERAL OFFENDERS: A COMPREHENSIVE OVERVIEW 12, ex. 9 (2016), accessed at https://www.ussc.gov/research/research-reports/recidivism-among-federal-offenders-comprehensive-overview.
[15] *Supra,* note 6.
[16] *United States v. Presely,* 790 F.3d 699, 701-04 (7th Cir. 2015).
[17] U.S. SENT'G COMM'N Report available at: https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/201212-federal-child-pornography-offenses/Full_Report_to_Congress.pdf (hereafter "Commission Report), page 18.
[18] Bono Report.
[19] Bono Report pg.13.

7

sentence and recovery.[20] Kyle has had no treatment so far. Now he will get that chance and once he receives treatment it is unlikely he will reoffend. Kyle asks the Court to consider Dr. Bono's analysis in the sentencing determination.

G.     Comparative Cases.

As Counsel stated, the average sentencing range for offender between 21-25 years of age is 207 months.[21] Counsel also offers two other cases for the Court's consideration. In *United States v. Dennis Naumann*, 4:21-CR-00708 MTS, the defendant was sentenced to 204 months for production of child pornography in which defendant took nude videos of his teenage stepdaughter with a hidden camera, and then sent the videos to strangers on the internet. Defendant also engaged in disturbing chats with others. In *United States v. Thomas Crimmins*, 4:18-CR-01020 AGF, the defendant was sentenced to 240 months for production of child pornography in which defendant recorded his sexually abusing a teenager involved in "consensual" sexual activity with defendant. Both defendants were over 50 years old.

In *United States v. Scott Falkner*, 4:22-CR-33 SRC, defendant was sentenced to 198 months for receipt of child pornography, though he was originally charged with production of child pornography. The production was dismissed through plea negotiations, in part, because Defendant accepted responsibility and had been abused by a family member as a child and had not received any treatment. The facts are defendant secretly recorded nude images of various minor stepdaughters with a hidden camera.

---

[20] *Id.*
[21] Available at https://ida.ussc.gov/analytics/saw.dll?Dashboard (2018-2022, § 2G2.2 Sentencing Zone D, with Criminal History Category I, 3 reported cases.

In this case the Court will make its own decision on what is just, and the Defense recognizes factual differences exist between this case and the others.  However, the sentences in these cases do help provide some precedent for below guideline sentences, even in cases such as these.  Defense respectfully request the Court consider these comparative cases and any others the Court deems proper.

*Conclusion*

Not a day goes by where Kyle doesn't think about his daughter and what he did.  He will think about her every day he is in prison, and every day thereafter.  He should.  But if we consider sentencing from the view of "how much is needed to punish, and how much is needed to ensure the defendant won't be back again," a sentence in excess of fifteen years is not needed for Kyle to learn from this and conform his behavior.

Kyle understands that he needs treatment and restrictions so he can make sure nothing like this happens again.  Family members and friends have written to the court to explain that Kyle has done many good things in his life.  The path to recovery and rehabilitation is most effective with strong support from family and friends. Through his character letters, and as shown by the psychosexual evaluation, Kyle has the support necessary to successfully return to being a contributing member of society.  Dr. Bono believes that this young man has a positive prognosis. Kyle understands that therapy and treatment are necessary to identify the underlying causes of his behavior and to ensure meaningful rehabilitation.

Kyle respectfully requests the Court recommend that he be placed in a BOP facility that offers sex offender treatment, mental health treatment, and is as close to the St. Louis metropolitan area as possible.  He also asks the Court not to assess any fines or special assessments beyond what is required by law, given that he is indigent.

Kyle will be punished for what he has done. He will remain confined for at least another decade and a half. He has forfeited the best years of his life because of his own selfish actions. Kyle cannot change what he has done. He can only look to the future and try to live a positive law-abiding life. He can only hope for another chance at life with a measured hand of punishment and mercy.

WHEREFORE, for the foregoing reasons the Defendant Kyle Gipson respectfully requests the Court sentence him to fifteen years incarceration and lifetime supervised release with sex offense related conditions as noted in the Pre-Sentence Report.

          Respectfully submitted,

          FRANK, JUENGEL & RADEFELD,
          ATTORNEYS AT LAW, P.C.

          By */s/ Joseph W. Flees*
          JOSEPH W. FLEES (#60872MO)
          Counsel for Defendant
          7710 Carondelet Avenue, Suite 350
          Clayton, Missouri 63105
          (314) 725-7777
          jflees@fjrdefense.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Jillian Anderson
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

          */s/ Joseph W. Flees*
          JOSEPH W. FLEES